**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE**

In re:

Debra A. Bradley

                              Debtor

Chapter 13
Case No. 15-20710

**ORDER DENYING CONFIRMATION OF
THE DEBTOR'S AMENDED CHAPTER 13 PLAN**

Richard Bradley, the holder of an unsecured claim, has objected to confirmation of the

debtor's Amended Chapter 13 Plan [Dkt. No. 17], contesting confirmation under 11 U.S.C. §§

1325(a)(3), 1325(a)(4), and 1325(a)(7).[1]  Richard's objection to confirmation is sustained in part,

and confirmation of the Amended Chapter 13 Plan is denied.  The debtor is granted leave to file

an amended plan.

## I.   BACKGROUND

This confirmation dispute is a contested matter under Fed. R. Bankr. P. 3015(f) and 9014.

As such, the Court makes the following findings of fact under Fed. R. Bankr. P. 7052 and Fed.

R. Civ. P. 52, based on Debra's testimony and the exhibits admitted at trial, which included

several state court orders related to the Bradleys' divorce.[2]

Richard Bradley and the debtor, Debra Bradley, were married in May 2009.  Four months

later, Debra sustained a work-related injury.  In February 2010, Debra and Richard were

divorced by a judgment incorporating Debra's agreement to pay Richard fifteen percent of any

---

[1]  Unless otherwise identified, all references in this opinion to the "Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101 et seq.

[2]  As to certain aspects of the procedural history of this matter, the Court also takes judicial notice of its own docket.  *See* Leblanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201).

lump-sum settlement received on account of her then-pending workers' compensation claim.

Later, in April 2013, Debra received a lump-sum of $155,000 in settlement of her workers'

compensation claim, $40,000 of which was earmarked for her anticipated future medical

expenses.

When Debra failed to pay Richard, he asked the state court to hold her in contempt of the

divorce judgment.  Debra responded by asking the state court to relieve her from the divorce

judgment, asserting that she had executed the agreement under coercion and duress.  In August

2014, the court entered an order denying Debra's request for relief, finding no support for her

allegations of coercion or duress.  The court also held Debra in contempt based on a finding, by

clear and convincing evidence, that she had the then-present ability to pay Richard the sum owed

under the agreement that had been incorporated into the divorce judgment.  The court interpreted

that agreement to exclude the $40,000 that had been earmarked for Debra's future medical

expenses; clarified that Debra was obligated to pay Richard $17,250; and ordered her to pay him

that sum by October 15, 2014.  The court also ordered Debra to reimburse Richard for the

attorney fees he had incurred in bringing his contempt motion, and ordered her to make that

reimbursement (in the amount of $3,458.25) by October 15, 2014.

Debra did not comply.  So Richard filed a second contempt motion, asserting that she had

failed to reimburse his legal fees, as ordered.  After a hearing at which Debra testified, the state

court entered a second contempt order in December 2014, finding that Debra had paid only $250

of the required reimbursement though she had the ability to satisfy that obligation to a much

greater extent.  The court also found that Debra disposed of her workers' compensation

settlement in the following manner: she purchased a new home for $70,000 and a new vehicle

for approximately $11,000; made home improvements to the tune of about $7,000; and gifted

$10,000 to each of her three children.  The court further found that Debra was unable to account

for the remainder of her settlement award, and that she had invested in her home even the funds

that had been earmarked for future medical expenses.  Debra explained that she had not used the

$40,000 earmarked for medical expenses for such expenses; instead, she invested the money into

her house "as equity should she ever need it."  The court also found that Debra had not sought to

obtain a home equity loan to satisfy her obligation to Richard.  Based on these findings, the court

held Debra in contempt and ordered her to either purge contempt by making a payment of

$3,458.25 no later than February 1, 2015, or to serve two days in jail.

Three days after the state court issued its second contempt order, Richard filed a third

contempt motion, asserting that Debra had failed to comply with the first contempt order by

paying him $17,250 by mid-October.  After a hearing, the state court entered an order on January

30, 2015, finding by clear and convincing evidence that Debra had failed to pay Richard even a

portion of the ordered sum.  The court found that Debra had elected to take on new

responsibilities in lieu of fulfilling her existing obligation to Richard to the greatest extent

possible.  The court again ordered Debra to either purge contempt by paying Richard $17,250

(plus $1,000 in reimbursement of Richard's additional legal fees) by June 1, 2015, or to serve

two days in jail.

By mid-June 2015, Debra had failed to make any additional payments on her obligations

to Richard.  After a hearing to show cause why Debra should not be incarcerated for contempt,

the state court found that Debra had made multiple, unsuccessful attempts to obtain a mortgage

on her residence.  The court also found that Debra had employed a broker, but had not listed her

home for sale.  The court further found that although Debra had the ability to satisfy some

portion of her obligation to Richard, she had willfully failed to do so.  The court ordered Debra

to serve a two-day jail sentence beginning on September 10, 2015, or to avoid incarceration by

paying Richard $2,600 and providing him evidence that her home had been listed for sale.

On October 13, 2015, Debra filed a chapter 13 petition.  In the time leading up to filing,

Debra was having medical issues and seeing a neurologist.  She was being harassed by her

creditors and falling behind on her bills.  Her largest financial obligation at the time was her debt

to Richard.

On her Schedules A and C, Debra listed a residence valued at $65,000 in which she

claimed a $95,000 exemption under 14 M.R.S. § 4422(1)(B).[3]  On her Schedule D, Debra

identified one secured creditor, "Kevin Bradley, c/o Carey & Associates," who she described as

a creditor holding a "divorce debt" of $18,250 secured by her residence.  On her Schedule F,

Debra disclosed multiple unsecured debts totaling $13,560.29.  Some of the entities identified on

Schedule F were listed with claims in the amount of zero because they were collection agencies

for other creditors.  Other entities identified on that Schedule held claims for debts that were

reported as last active in 2009 and 2011.

At the time of filing, Debra's monthly income consisted of $1,008 in social security

benefits, $50 of food stamps, and $50 of heating assistance.  Her monthly expenses totaled

$978.66, leaving her with monthly net income of $129.34.  According to her Form 22C-1,

Debra's applicable commitment period was three years under 11 U.S.C. § 1325(b)(4).

In January 2016, Debra filed the Amended Chapter 13 Plan, in which she proposed to

make thirty-six monthly payments of $130 to the chapter 13 trustee to fund a base plan of

$4,680, the minimum required by section 1325(b).  Of that amount, Debra proposed to distribute

$468 to the standing chapter 13 trustee to cover his statutory fee; $1,000 to her attorney; $2,000

to an administrative reserve; and $1,212 to her general unsecured creditors.  The plan set forth

---

[3] There were no timely objections to Debra's claimed exemption in her residence.

zero as the liquidation amount that would be available for Debra's unsecured creditors if the case were instead liquidated under chapter 7.  The plan also anticipated that Richard's $18,250 lien on Debra's residence would be stripped, on Debra's separate motion, as a judgment lien that impaired her homestead exemption.

The chapter 13 trustee timely objected to the plan, asserting that he had not yet received information about Debra's debt to Richard and her "possibly avoidable transfers to family members" from her worker's compensation settlement, and that he needed that information to determine whether the plan met the requirements for confirmation under 11 U.S.C. §§ 1325(a)(3), 1325(a)(4), and 1325(a)(6).  Richard also objected, asserting that Debra's plan had not been filed in good faith and that her case been initiated to "subvert" the Bradleys' divorce judgment and the related contempt orders.

No claims had been filed by the claims bar date in February 2016, and the matter proceeded to a hearing on confirmation on March 10.  At that hearing, the Court ordered Debra to file a motion to avoid lien.  Debra timely moved to avoid Richard's lien, and Richard objected. After several hearings, the Court entered an order avoiding Richard's judicial lien under 11 U.S.C. § 522(f) and granting Richard until September 1 to file a proof of unsecured claim. Richard timely filed a proof of claim, asserting an unsecured claim of $18,250, to which Debra did not object.

Richard also amended his objection to Debra's plan, asserting that the Court should either dismiss the case for Debra's lack of good faith in filing the petition and plan, or grant confirmation on the condition that Debra's plan be amended to pay Richard's claim in full.  In her response, Debra asserted that Richard's counsel had made frivolous arguments and should therefore be required to pay her attorney fees under Fed. R. Bankr. P. 9011.  At a further

confirmation hearing on September 29, the Court denied Debra's request for Rule 11 sanctions

and denied Richard's request for conditional confirmation.

On October 25, the Court held an evidentiary hearing on confirmation of Debra's

amended plan and the objections filed by Richard and the chapter 13 trustee.  At trial, the parties

offered seven stipulated exhibits (all of which were admitted without objection), and the Court

heard testimony from Debra.  At that time, Debra was $255 in arrears on her plan payments.

After trial, the trustee filed a memorandum in which he abandoned his prior objections,

and argued that the debtor had demonstrated that her plan satisfied the good faith requirements of

section 1325.  Richard also filed a post-trial memorandum, in which he asserted that Debra had

filed her petition in bad faith, merely to avoid incarceration, when she was not in financial

extremis and did not actually owe the unsecured debts that she had listed on her Schedule F.

Richard additionally asserted that Debra had proposed her Amended Chapter 13 Plan in bad

faith, to avoid paying her debt to him to the furthest extent of her ability and to shield from him

the $30,000 of her workers' compensation award that she had gifted to her children.

## II.  DISCUSSION

A party objecting to confirmation of a chapter 13 plan bears the initial burden of

producing some evidence in support of its objection.  *See* In re Woodman, 287 B.R. 589, 593

(Bankr. D. Me. 2003) (regarding burdens of objecting party and plan proponent).  If the

objecting party produces such evidence, the burden then shifts to the debtor, who bears the

ultimate burden of proving by a preponderance of the evidence that the plan meets each of the

statutory predicates for confirmation.  *See* id.[4]

---

[4] Richard and Debra both presented evidence at trial.  The sequence of that presentation does not alter or inform
the burden of proof in this matter.

Neither the trustee nor Richard pressed or presented evidence relevant to an objection to confirmation under section 1325(b)(1), so that objection is waived. Both at trial and in his pleadings, Richard made arguments regarding the good faith requirements of sections 1325(a)(3) and 1325(a)(7). He also produced enough evidence to make out an objection under section 1325(a)(4). As a result, the Court concludes that Richard satisfied his initial burden with respect to objections predicated on sections 1325(a)(3), 1325(a)(4), and 1325(a)(7). Accordingly, the Court focuses on whether Debra has satisfied her burden of demonstrating that her plan satisfies these requirements of section 1325(a).

Section 1325(a) establishes nine requirements for confirmation of a chapter 13 plan, including that "the plan has been proposed in good faith and not by any means forbidden by law," 11 U.S.C. § 1325(a)(3), and that "the action of the debtor in filing the petition was in good faith," 11 U.S.C. §1325(a)(7). These questions of good faith are inherently factual questions, not capable of any bright-line test or formulation.

The Bankruptcy Code does not define "good faith." Berliner v. Pappalardo (In re Puffer), 674 F.3d 78, 81 (1st Cir. 2012). In this Circuit, courts determine good faith under section 1325(a)(3) and (a)(7) by considering the totality of the circumstances and holistically balancing all relevant factors. Id. at 81 n.2 and 82. The inquiry is fact-intensive, and the factors considered may vary from case to case. Zizza v. Pappalardo (In re Zizza), 500 B.R. 288, 293 (B.A.P. 1st Cir. 2013). The ultimate inquiry is "whether the debtor is attempting to thwart his creditors, or is making an honest effort to repay them to the best of his ability." Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 212 (B.A.P. 1st Cir. 2005) (quotation marks omitted). "Whether this balancing of equities is called moralistic, judging, or evaluating, it is exactly what the courts

- 7 -

have been left with under the ambiguous requirement of good faith." Id. (quotation marks

omitted).

"The good faith requirements under subsections 1325(a)(3) (good faith plan) and

1325(a)(7) (good faith bankruptcy petition) are closely related and are frequently based on the

same factors." In re Lavilla, 425 B.R. 572, 577 (Bankr. E.D. Cal. 2010).  A distinction between

the good faith petition analysis and the good faith plan analysis could be drawn on the basis of

the distinct temporal junctures at which the good faith obligation is imposed.  *See* In re Sullivan,

326 B.R. at 211 ("[T]he obligation of good faith is imposed on the debtor at two stages of a

Chapter 13 proceeding."); In re Sadler, 378 B.R. 780, 788 n.20 (Bankr. E.D. Tex. 2007) (opining

that an objection under section 1325(a)(7) should pertain to the debtor's pre-petition conduct,

while an objection under section 1325(a)(3) should pertain to the post-petition act of plan

proposal).  However, to the extent that the debtor's prepetition actions alter the amounts

available for distribution under a plan, or affect the value of property subject to the best interests

of creditors test, the debtor's prepetition conduct may bear upon the debtor's good faith in

proposing a plan.  *See* In re Shafer, 393 B.R. 655, 660-61 (Bankr. W.D. Wis. 2008).  It is

therefore appropriate to consider both pre-petition conduct and post-petition conduct in the

totality of the circumstances to determine a debtor's good faith (or lack thereof) in filing a

petition and proposing a plan.  *See* In re Fleury, 294 B.R. 1, 6 (Bankr. D. Mass. 2003) (reaching

same conclusion).

Like the court in In re Wrobel, 533 B.R. 863 (Bankr. W.D. N.Y. 2015), this Court

concludes that the multi-factored good faith analysis essentially boils down to "fundamental

fairness." Id. at 868.  In part, this standard is satisfied by "process, such as offering to negotiate

a Chapter 13 plan with the [objecting] creditor or creditors.  Partly it is substance, such as a

willingness to make sacrifices in order to offer a fair result."  Id. at 869.

When contrasted with the good faith requirements of sections 1325(a)(3) and 1325(a)(7),

the test of section 1325(a)(4) is relatively concrete.  Known as the "best interests of creditors"

test, section 1325(a)(4) is satisfied if:

> the value, as of the effective date of the plan, of property to be distributed under
> the plan on account of each allowed unsecured claim is not less than the amount
> that would be paid on such claim if the estate of the debtor were liquidated under
> chapter 7 of this title on such date[.]

11 U.S.C. § 1325(a)(4).  The best interests test involves two calculations.  In re Goudreau, 530

B.R. 783, 786 (Bankr. D. Kan. 2015).

> The first is a calculation of the value, as of the effective date of the proposed
> Chapter 13 plan, of the property to be distributed to each unsecured creditor
> during the case.  The second, the liquidation analysis, is the calculation of the
> amount that would be paid on each allowed unsecured claim if the debtor's estate
> where liquidated 'on such date' in a hypothetical Chapter 7 case, taking into
> account the Chapter 7 administrative expenses.

Id. (footnotes omitted).  In the second step, the liquidation analysis must also account for any

chapter 5 recoveries that would increase the assets in the estate and the distributions to creditors.

See Cox v. Cox (In re Cox), 247 B.R. 556, 565 n.13 (Bankr. D. Mass 2000).

In this case, the facts relevant to Debra's satisfaction of the best interests of creditors test

also factor into the good faith plan-filing inquiry.  Before considering the relationship between

the best interests test and the good faith plan requirement in this case, the Court first addresses

the issue of Debra's good faith in filing her petition.

Aside from Debra's Schedule F list of unsecured creditors, Richard has not attacked the

veracity of any of the sworn assertions contained in the schedules and statements that Debra filed

with her petition.  He has not alleged that Debra exaggerated her expenses, underestimated her

income or ability to earn income, concealed or undervalued assets, or otherwise obfuscated her

financial condition when filing the petition.  Richard's argument that Debra lacked good faith in

filing the petition are two-fold: he asserts that she populated her Schedule F with stale or non-

existent debts, and that she filed for the sole purpose of thwarting the state court's contempt

orders.

Richard's assertion that Debra "puffed-up" her Schedule F list of unsecured creditors is

unpersuasive.   Perhaps there might have been a valid statute of limitations defense to one or

more of the scheduled debts, but there is nothing unremarkable or unsavory about a debtor

scheduling disputed claims.  That happens regularly and debtors are required to be accurate in

completing their schedules.  The Court is also unwilling to infer from the failure of Debra's

scheduled unsecured creditors to file proofs of claim that Debra falsified or otherwise

misrepresented the nature of those obligations.  Creditors may, for many reasons, decide not to

file claims when they have a right to do so.  At least at its inception, this case was *not* a mere

two-party dispute as Richard asserts.

Richard's attack on Debra's motivation for filing fares no better.  His claim that Debra

filed for bankruptcy for the sole purpose of avoiding incarceration pursuant to the state court

contempt saga is neither supported by the evidence nor determinative of the good faith inquiry.

As she testified at trial, Debra's motivation in seeking bankruptcy relief was to address all of her

debts, not merely her obligation to Richard. Debra's act of filing the petition shortly after she

was to report to jail to serve time for her contempt of state court orders does not, by itself, reflect

an improper motive for seeking bankruptcy relief.  Perhaps Debra concluded that a chapter 13

filing was more useful, in terms of solving her financial issues, than a period of incarceration.  A

debtor may appropriately resort to chapter 13 to resolve financial difficulties caused by the

debtor's own mistakes.  *See* In re Johnson, 428 B.R. 22, 24 (Bankr. W.D. N.Y. 2010).  And

"[m]any, if not most, bankruptcy petitions are filed in response to creditor enforcement efforts."

In re Green, 2010 WL 396253 at *3 n.8 (Bankr. E.D. Va. Jan. 27, 2010).  Despite Richard's

contentions to the contrary, the Court finds that Debra's act of filing for relief under the chapter

13 was not itself an attempt to "thwart" her creditors.

However, the Court cannot conclude that Debra proposed her plan in a good faith effort

to offer Richard a fair result.   In reaching this conclusion, the Court is mindful of Debra's

difficult financial situation.  According to her schedules and statement of financial affairs, she is

living a rather spartan existence.  She lists no unreasonable expenses, and she has little in the

way of discretionary income to devote to repayment of her debts, or to support repayment of

additional debts.  However, the Court is troubled by Debra's steadfast refusal to comply with the

state court orders prior to the bankruptcy, and her proposed plan of reorganization that affords

Richard a modest return while she retains exempt equity in the home and vehicle that she

purchased, and her children retain the substantial sums gifted to them, with funds that could have

been used to satisfy some or all of Richard's claim.

When Debra received her worker's compensation settlement in April 2013, she had the

ability to satisfy Richard's claim.  Instead, she used the settlement to buy a home and a vehicle,

invest in home equity, and gift $10,000 to each of her three children.  To make these substantial

gifts to her children and funnel a portion of her settlement into her home and vehicle while

Richard actively sought payment on his claim shows that, before she filed her petition, Debra

was not making a genuine effort to pay Richard's claim.[5]  Debra was also unable to account for

---

[5]  Richard produced evidence that gives rise to an inference that Debra's gifts to her children may have been
recoverable as fraudulent transfers.  Debra has failed to rebut this inference.  The Court is unwilling to confirm the
Amended Chapter 13 Plan that would discharge Debra's obligation to Richard on terms that may leave Richard
worse off than he would have been if Debra had filed under chapter 7.

- 11 -

some of the settlement money.  This further sharpens a suspicion that she was motivated, at least

in part, by an intent to hinder, delay, or defraud Richard in his attempts to collect on his claim.

Debra has continued in a similar vein post-petition, by proposing a plan that will pay

Richard only a small distribution and discharge the majority of his claim.[6]  Because Richard was

the only creditor to timely file a proof of claim, the entirety of Debra's proposed unsecured

creditor distribution of $1,212 would be applied to his claim of $18,250, over a three-year

period.  Meanwhile, Debra would maintain the unencumbered and exempt residence and vehicle

that she purchased, and her children would retain the substantial pre-petition gifts that she made

to them, in transactions that extinguished Debra's worker's compensation settlement despite her

voluntary commitment to transfer a portion of that settlement to Richard pursuant to the parties'

divorce.  Debra's Amended Chapter 13 Plan "seeks to extract too many advantages from the

Chapter 13 process," while unfairly disadvantaging a single objecting creditor.  In re Wrobel,

525 B.R. 211, 215 (Bankr. W.D. N.Y. 2015).

The Court concludes that Debra's Amended Chapter 13 Plan was not proposed in good

faith, and denies confirmation.  To obtain confirmation in this chapter 13 case, Debra must

propose a plan that will result in a fair distribution to Richard.  Although the Court cannot

compel Debra to contribute exempt assets, to make payments that extend beyond her applicable

commitment period, or to negotiate plan contributions from her relatives, Debra cannot meet the

good faith plan requirement without making a sacrifice beyond that contemplated by the plan at

issue here.  See Wrobel, 525 B.R. at 217.  "Simply committing all of one's non-exempt assets

---

[6] Although Richard did not ask this Court to consider the issue, other courts have identified the non-dischargeable nature of a debt in chapter 7 as a factor that may, in combination with other factors, demonstrate that a debtor lacked good faith in filing a chapter 13 petition and plan. See, e.g., In re Scotten, 281 B.R. 147, 149 (Bankr. D. Mass. 2002). It appears that the debt at issue in this case would be non-dischargeable in a chapter 7 pursuant to 11 U.S.C. § 523(a)(15).

and meeting the 'projected disposable income' test, does not compel a ruling . . . that a plan

meets the good faith test of 11 U.S.C. § 1325(a)(3)." <u>Id.</u> at 218 (emphasis omitted).

### III. CONCLUSION

Confirmation of Debra's Amended Chapter 13 Plan [Dkt. No. 17] is DENIED.   Debra is

given leave to file an amended plan on or before March 10, 2017.  If Debra does not file and

serve an amended plan in a timely manner, this case may be dismissed or converted to a case

under chapter 7 without further notice or hearing.

Dated: February 10, 2017

                    Michael A. Fagone
                    United States Bankruptcy Judge
                    District of Maine